UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

VICKY JONES

    Plaintiffs,

-vs-

SUBURBAN CJ OF AA, LLC,

    Defendant.

_____

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1.     This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2.     As to any supplemental, (State), claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

### PARTIES

3.     The Plaintiff in this lawsuit is Vicky Jones, ("Plaintiff" or "Ms. Jones"), who resides in Grand Blanc, Michigan in Genesee County.

4.     The Defendant to this lawsuit is Suburban CJ of AA, LLC, d/b/a Suburban Chrysler-Jeep of Ann Arbor, ("Suburban"), which is a Michigan limited liability company doing business in Michigan and which by statute and condition of licensing, may be served through its resident agent, David T. Fischer, 1795 Maplelawn Drive, Troy, MI 48084.

5.     At all relevant times Suburban -- in the ordinary course of its business -- regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than four installments and is the person to whom the transaction

1

which is the subject of this action is initially payable.

6. Suburban is a creditor under TILA, 15 U.S.C. § 1602(g) and regulation Z § 226.2(a)(17).

7. Suburban is a creditor under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq and Regulation B.

## VENUE

8. The transactions and occurrences which give rise to this action occurred in Washtenaw County.

9. Venue is proper in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

10. Plaintiff began searching for a new vehicle in August of 2016, and ended up at Suburban on September 9, 2016 to purchase a new 2016 Dodge Charger for $37,889.46 plus taxes related fees. (**Exhibit A – Retail Installment Contract**).

11. Plaintiff made a down payment of $1,000 planned on financing the remaining balance and she provided the requested credit information to Suburban representatives to achieve financing.

12. Upon information and belief Plaintiff was not properly approved for financing by any bank or other party on September 9, 2016, but nonetheless took delivery of the above referenced vehicle.

13. An Application for Michigan Title (RD-108 form) was executed on September 9, 2016 listing CPS, Inc. ("CPS"), as the "First Secured Interest", (**Exhibit B**).

14. However this document was fraudulently drafted and filed by Suburban, because CPS never had a security interest in the subject vehicle.

15. Plaintiff is not aware of the consumer protection laws or financing requirements, and thus when she took delivery of the subject vehicle she thought she was financed by CPS.

2

16. Plaintiff also received a Certificate of Title which indicates that CPS is the "First Secured Party". (**Exhibit C**). This is not true.

17. Shortly after the purchase referenced above, Suburban employees began to contact Plaintiff and advised her that there was a problem with the financing, and urging Plaintiff to bring the vehicle back to Suburban. Plaintiff has reasonably refused to do so.

18. Suburban employees have also notified Plaintiff that they are trying to get her financed with another entity. Accordingly, this shows that CPS is not a secured party, and that Suburban delivered the subject vehicle to Plaintiff without securing proper financing.

19. Accordingly, the RD-108, confirming CPS financing, was fraudulently filed with the State of Michigan to obtain the title.

20. As a result, the title is not accurate and secured by fraudulent misrepresentations of Suburban, and Plaintiff has legitimate concerns that she is now driving a vehicle which is not legal or may result in subjecting her to liability or damages.

21. Since Plaintiff desperately needs transportation, she has been confused and emotionally stressed by the fraudulent transactions referenced above.

22. The original retail installment contract is not conditional; the sale or assignment of the retail installment contract does not constitute a condition precedent in that contract.

23. Upon information and belief, Plaintiff's personal information was provided to more than one creditor. When Plaintiff entered the sales transaction, she was not advised by Suburban that other creditors (other than CPS) were provided with her personal information. When Plaintiff took delivery of the vehicle she reasonably thought she was financed by CPS, and did not authorize Suburban to access or share her credit information with other creditors.

24. When a car dealer sells a vehicle and delivers it to a consumer without approval for

financing or credit, this is known as a "Spot-Delivery" or a "yo-yo" sale.

25. A "Spot Delivery" is illegal in Michigan.

26. A "yo-yo" sale violates the Truth in Lending Act.

27. Plaintiff was confused, shocked, embarrassed, and emotionally distressed by the events outlined above, as well as other events which are not listed in this Complaint.

28. To this day, Plaintiff asserts there is no lien on his vehicle and she has no operational finance contract.

29. Because the RISC was not accepted by CPS, it is conditional, and thus Plaintiff has not been provided with legal and adequate information regarding the terms of financing of the subject vehicle as mandated by the Truth-In-Lending Act, (TILA).

30. Any document which purports to permit Suburban to conduct a spot delivery, yo-yo sale, or consider the financing offered as conditional is unlawful and has been explicitly prohibited in the Sixth Circuit. {(see *Patton v. Jeff Wyler Eastgate, Inc.* 608 F.Supp.2d 907 (2007)}.

31. Due to Defendant's fraud, negligence, violation of statute and other violations of law outlined below, Plaintiff has been forced to file this lawsuit and has been damaged as outlined below.

## COUNT I - TRUTH IN LENDING ACT

32. Plaintiff incorporates the preceding allegations by reference.

33. Defendant failed to accurately disclose the applicable finance charge as required by 15 U.S.C. § 1638 and Reg Z § 226.18(d)

34. Defendant failed to accurately disclose and itemized the amount financed in violation of 15 U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

35. As a consequence of failing to accurately state the actual finance charge, Defendant also

misstated the applicable "APR" in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

36. Defendant failed to accurately disclose the applicable "APR" as required by 15 U.S.C. § 1638; Reg Z § 226.18(32); Reg Z § 226.22.

37. Defendant was required to make the disclosures required by 16 U.S.C. § 1638 prior to consummating the sale of the vehicle.

38. Those disclosures were required to be made in writing, in form that could be kept by the consumer so that consumers may shop for credit prior to engaging in a credit transaction.

39. Defendant failed to make those disclosures in a timely fashion, or ever, in violation of 15 U.S.C. § 1638(a)(4).

40. Defendant is liable to Plaintiff for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

41. Upon information and belief, Defendant also provided financial disclosures that were meaningless because the disclosures were subject to unilateral change by Defendant after the Plaintiff signed the Retail Installment Contract, ("RISC"), agreeing to the offered terms.

42. Plaintiff asserts that the RISC terms presented to her were entirely illusory because, when she signed a RISC agreeing with the terms, Defendant considered each and every provision in the RISC to be non-final and subject to change at Defendant's whim.

43. Upon information and belief, Defendant invariably violated TILA and Regulation Z in this sale by using illusory TILA disclosures in its RISCs including the APR, the Finance Charge, the amount financed, the total of payments, the total sale price and every other term in the RISCs because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at defendant's sole and arbitrary discretion.

WHEREFORE, Plaintiff is entitled to damages under TILA, for actual and statutory

damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

## COUNT II - EQUAL CREDIT OPPORTUNITY ACT

44. Plaintiff incorporates the preceding allegations by reference.

45. At all relevant times Defendant -- in the ordinary course of its business -- operated a motor vehicle sales establishment which in the ordinary course of business sold motor vehicles to consumers like Plaintiff.

46. Following the receipt of Plaintiff's complete application for credit by Plaintiff, Defendant was required to make a credit decision within 30 days.

47. Based upon that credit application, Defendant first approved Plaintiff's for credit, and then revoked that credit by failing to secure third party financing and demanding that Plaintiff provide additional information and a co-signor after the sale and delivery of the subject vehicle.

48. These actions constituted adverse action for purposes of the ECOA.

49. Defendant provided false reasons or no reasons for the adverse actions.

50. Defendant has no policies or procedures in place to comply with the ECOA and Regulation B.

51. This refusal to provide an accurate adverse action notice constituted a violation of the ECOA, 15 U.S.C. § 1691 et seq. by Defendant.

52. The initial credit approval by Defendant was false and they knew it to be false at the time it was issued.

53. Plaintiff suffered damages by these violations of ECOA in an amount to be determined by a jury.

## COUNT III – MISREPRESENTATION/FRAUD

54. Plaintiff incorporates the preceding allegations by reference.

55. Defendant made material representations, written, verbally, and by omission, which are outlined above which were intended to induce the reliance of Plaintiff, including but not limited to:

    a. Plaintiff would be timely and properly financed;

    b. Any and all documents required to make the sale final, binding and legally legitimate would be filed in a timely fashion;

    c. Plaintiff would be properly licensed and titled to drive the subject vehicle legally;

    d. That Defendant would refrain from soliciting financing for the subject transaction and refrain from causing inquiries on Plaintiffs' credit report;

    e. That Plaintiff was accepted for final financing and that no other information or duties were required;

    f. That Plaintiff would receive a license plate and an extra set of keys;

    g. That Plaintiff did not need a co-signor;

    h. That if Plaintiff made the $1,000 down payment and signed the requested documents, the subject vehicle would be finally sold to her;

    i. All of the other misrepresentations and/or omissions outlined in the general allegations above.

56. The material representations and/or omissions did induce the reasonable reliance of Plaintiff.

57. Defendant made the material representations and/or omissions with actual knowledge of their falsity.

58. Defendant made the material representations and/or omissions with reckless disregard to their truth or falsity.

59. Defendant made the material representations and/or omissions even though it should have known that they were false or should have been disclosed.

60. These actions constitute misrepresentations upon Plaintiff by Defendant.

61. Plaintiff has suffered damages as a result of these misrepresentations, including emotional distress, stress, loss of sleep, embarrassment and humiliation.

## COUNT IV – FAIR CREDIT REPORTING ACT

62. Plaintiff incorporates the preceding allegations by reference.

63. The Fair Credit Reporting Act requires auto dealers that lend money to provide "risk based pricing notices" to consumers under 15 U.S.C. §1681m(h).

64. The 2003 FACTA amendments to the FCRA require lenders to provide "risk based pricing notices" or RBPNs to consumers per 15 U.S.C. Sec. 1681m(h).

65. Under that provision, and under the FTC's related regulations (see 16 CFR Sec. 640.1 et seq.; 12 CFR Sec. 222.70 et seq.) any lender who, after consulting a credit report and a credit score, offers a consumer anything less than the most favorable terms possible, must give the consumer an RBPN that discloses what its issues with the report were and what the credit score was.

66. When an auto dealer, like Suburban, contacts more than one lender to see if they will offer the consumer a loan, and then sets the consumer up with a loan from one of them, the FTC regulations require the auto dealer, and not the lenders, to provide the consumer with an RBPN.

67. The rationale behind this rule is to insure that a consumer, like Plaintiff, in this kind of situation will get an RBPN from someone she recognizes (the dealer) as opposed to multiple notices from entities that she doesn't recognize (the behind-the-scenes lenders). Also, it prevents lenders who didn't want to give consumers RBPNs from routing their loans through dealers as a way of avoiding the RBPN requirement. (See *National Automobile Dealers Association v. Federal Trade Commission*, 864 F. Supp. 2d 65, at 78-80).

68. Upon information and belief, Suburban contacted more than one lender regarding Plaintiff

and unlawfully failed to provide Plaintiff with the RBPN.

69. This failure to provide a risk based pricing notice constituted a willful violation of the FCRA, 15 U.S.C. § 1681n.

70. Plaintiff suffered statutory and actual damages as the result of defendant's failed FCRA notice, including damage to her credit reputation, emotional distress, loss of sleep, stress, mental anguish, along with attorney fees and costs.

71. WHEREFORE, Plaintiff is entitled to damages as authorized under the Fair Credit Reporting Act for both willful and negligent violations.

## COUNT V – BREACH OF CONTRACT

72. Plaintiff incorporates the preceding allegations by reference.

73. The parties agreed that if Plaintiff made a down payment and committed herself to executing a purchase and finance contract which bound her to further payments and other legal obligations, that Suburban would deliver vehicle and title, with appropriate financing.

74. The failure of Suburban to deliver conforming goods, title, and financing constitutes a material breach of contract.

75. The parties agreed that Plaintiff would be timely and properly financed.

76. The parties agreed that any and all documents required to make the sale final, binding and legally legitimate would be filed in a timely fashion.

77. The parties agreed that Plaintiff would be properly titled to drive the subject vehicle legally.

78. The parties agreed by operation of law and by omission that Defendant would refrain from soliciting financing for the subject transaction and refrain from causing inquiries on Plaintiff's credit report.

79. The parties agreed that Plaintiff was accepted for final financing and that no other information or duties were required.

80. The parties agreed that if Plaintiff made the $1,000 down payment and signed the requested documents, the subject vehicle would be finally sold to her.

81. In connection with the contract, Plaintiff elected to purchase a Chrysler Service Contract for $930.00. On September 20, 2016, Defendant unilaterally cancelled the contract without Plaintiff's consent in further violation of the agreement between the parties.

82. Suburban violated all of the above agreements between the parties.

83. Plaintiff has suffered damages as a result of this breach of contract, as outlined in this Complaint.

84. Plaintiff suffered damages and continues to suffer damages as a result of this breach of contract, including but not limited to constructive repossession, loss of down payment, in addition to emotional distress, attorney fees and court costs.

## COUNT VI – MOTOR VEHICLE INSTALLMENT SALES CONTRACT ACT

85. Plaintiff incorporates the preceding allegations by reference.

86. Defendant failed to properly complete all necessary terms of the installment contract as rquired by M.C.L. § 566.302 *et seq*.

87. Defendant failed to properly complete all necessary terms of the installment contract as required by M.C.L. § 566.302 *et seq*.

88. Plaintiff suffered damages in the amount of the finance charge imposed, that amount being the amount Plaintiff paid to Defendant.

## REQUEST FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief

1. Assume jurisdiction over this case including all supplemental claims.

2. Award actual damages.

3. Award statutory and punitive damages.

4. Award statutory costs and attorney fees.

5. Award damages for emotional distress and mental anguish.

6. Award any other relief which is appropriate fair and just.

7. And, award equitable/declaratory relief including an Order compelling Defendant provide financing and good title, as well as retract any derogatory credit reporting regarding either Plaintiff, and refrain from any further use of Plaintiff's personal information or credit reports.

Respectfully Submitted,

<u>/s/ Adam S. Alexander</u>
ADAM S. ALEXANDER (P53584)
ANDREW R. MIKOS (76268)
Attorney for Plaintiff
17200 W. Ten Mile Rd., Ste. 200
Southfield, MI 48075
adalesq@gmail.com
(248) 246-6353

September 26, 2016

11

**EXHIBIT "A"**

# EXHIBIT "A"

**(WITH ARBITRATION PROVISION)**

Dealer Number _____  Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| VICKY SUE JONES<br>1114 LAKE SHORE CIRCLE<br>GRAND BLANC MI 48439<br>GENESEE | N/A | SUBURBAN CJ OF AA<br>2060 WEST STADIUM BLVD.<br>ANN ARBOR MI 48103 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2016 | DODGE CHARGER | 66 | 2C3CDXJG7GH144435 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $8035.00 |
|---|---|---|---|---|
| 18.45 % | $ 23515.94 | $ 29853.46 | $ 53369.40 | $ 61405.40 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | 635.35 | Monthly beginning 10/08/2016 |
| N/A | N/A | N/A |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __15__ or __5__ % of the part of the payment that is late, whichever is __greater__.
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Insurance.** You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is authorized to sell insurance in Michigan. You are not required to buy any other insurance to obtain credit.
If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the Insurance you want and sign below:**
**Optional Credit Insurance**
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Premium:
Credit Life $ __N/A__ Term __N/A__
Credit Disability $ __N/A__ Term __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

**ITEMIZATION OF AMOUNT FINANCED** (Seller may keep part of the amounts paid to others.)

1 Cash Price
  A Taxable Part of Cash Price
    to Seller for Vehicle ................................................ $ 33857.00
    to Seller for Accessories and Installation Charges ........ $ N/A
    to Seller for Document Preparation Fee ...................... $ 210.00
    to N/A for N/A ........................................................ $ N/A
    to N/A for N/A ........................................................ $ N/A
    to N/A for N/A ........................................................ $ N/A
    Total Taxable Part of Cash Price ............................... $ 34067.00
  B To Government Agencies for Sales Tax ...................... $ 2045.46
  C Non-Taxable Part of Cash Price
    to N/A for N/A ........................................................ $ N/A
    to MOPAR for POWERTRAINPLUS ............................. $ 930.00
    to N/A for N/A ........................................................ $ N/A
    to N/A for N/A ........................................................ $ N/A
    Total Non-Taxable Part of Cash Price ........................ $ 930.00
  Total Cash Price ..................................................... $ 37042.46 (1)
2 Total Downpayment =
  Trade in N/A

**Other Optional Insurance**
☐ N/A
Type of Insurance __N/A__ Term __N/A__
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

☐ N/A
Type of Insurance __N/A__ Term __N/A__
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

|   |   |   |
|---|---|---|
| Less Pay Off Made By Seller | $ | N/A |
| Equals Net Trade In | $ | N/A |
| + Cash | $ | 1000.00 |
| + Other MFG REBATES | $ | 7036.00 |
| (If total downpayment is negative, enter "0" and see 4H below) | $ | 8036.00 (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | $ | 29006.46 (3) |

4 Other Charges Including Amounts Paid to Others on Your Behalf
  A Cost of Optional Credit Insurance Paid to Insurance
    Company or Companies
    Life                                         $ N/A
    Disability                                   $ N/A                    $ N/A
  B Other Optional Insurance Paid to Insurance Company or Companies    $ N/A
  C Optional Gap Contract                                               $ 800.00
  D Official Fees Paid to Government Agencies                           $ 8.00
  E Government Taxes Not Included in Cash Price                         $ N/A
  F Government License Fees and/or Registration Fees
    N/A                                                                 $ N/A
  G Government Certificate of Title Fees                                $ 15.00
  H Prior Credit or Lease Balance Paid to N/A
    N/A                                                                 $ N/A
  I Other Charges (Seller must identify who is paid and describe purpose.)
    to DEALER          for ELECT FILING FEE     $ 24.00
    to N/A             for N/A                  $ N/A
    to N/A             for N/A                  $ N/A
    to N/A             for N/A                  $ N/A
    to N/A             for N/A                  $ N/A
    to N/A             for N/A                  $ N/A
    to N/A             for N/A                  $ N/A
    to N/A             for N/A                  $ N/A
    to N/A             for N/A                  $ N/A
  Total Other Charges and Amounts Paid to Others on Your Behalf         $ 847.00 (4)
5 Amount Financed - Principal Balance (3 + 4)                           $ 29853.46 (5)
6 Finance Charge                                                        $ 23515.94 (6)
7 Total of Payments - Time Balance                                      $ 53369.40 (7)

Payment Schedule: The payment schedule will be 84 installments of $ 635.35 each, monthly beginning 10/08/2016, or if scheduled payments are irregular or uneven, as follows N/A
N/A

**Insurance** — N/A Life insurance checked above
X N/A                                          N/A
Buyer Signature                                Date
X N/A                                          N/A
Co-Buyer Signature                             Date

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4C of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.
Term 84 Mos. CSCI
                      Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _____

☐ If this box is checked, the following late charge applies to vehicles purchased primarily for business or agricultural use.
If a payment is not received in full within N/A days after it is due, you will pay a late charge of $ N/A or N/A % of the part of the payment that is late, whichever is less.
If this box is not checked, the late charge in the "Federal Truth-In-Lending Disclosures" still applies.

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Buyer Signs X _____
Co-Buyer Signs X N/A

OPTION: ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before N/A, Year N/A. SELLER'S INITIALS N/A

**NO COOLING OFF PERIOD**
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs X _____   Co-Buyer Signs X N/A
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See back for other important agreements.

**Warning:** The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others, unless so indicated hereon.

**Notice To Buyer:** Do not sign this contract in blank. You are entitled to 1 true copy of the contract you sign without charge. Keep it to protect your legal rights.

Buyer Signs X _____ Date 09/08/16  Co-Buyer Signs X N/A _____ Date N/A
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but

**EXHIBIT "B"**

# EXHIBIT

# "B"

# APPLICATION FOR MICHIGAN TITLE & REGISTRATION
## STATEMENT OF VEHICLE SALE

**STATE OF MICHIGAN** — **DEPARTMENT OF STATE**

Purchase Date: 09/08/2016
Delivery Date: 09/08/2016
Invoice/Stock No.: BG0164
Dealer: SUBURBAN CDJR OF AA
Address: 2000 WEST STADIUM BLVD
City: ANN ARBOR
County: WASHTENAW
State: MICHIGAN
Zip Code: 48103
Dealer License: A003524
Sales Tax License: 45-5367005
Phone Number: 734-662-3175

DEAL # 11607
CUST # 1430686

Vehicle Sold: XX New
Trade-In: No

### TEMPORARY VEHICLE REGISTRATION
*Used to transfer plates — Expires 15 days after delivery date*

Plate transferred from: Year 2013, Make CHEVY
Vehicle No.: 2G1FA1E39D112316
Plate No.: AEK821
Temp. Expiration Date: 09/23/2016

### VEHICLE USE AND HISTORY DISCLOSURE:
- [ ] POLICE VEHICLE
- [ ] VEHICLE HAS BEEN FLOOD-DAMAGED
- [ ] GOVERNMENT VEHICLE
- [ ] SALVAGE TITLE HAS PREVIOUSLY BEEN ISSUED
- [ ] TAXI XX

### ODOMETER MILEAGE
Reading: 66 — NO TENTHS
[XX] actual mileage

I have selected and agree to pay the OPTIONAL $24 CVR electronic filing fee

Factory Installed Accessories: [X] Factory List Affixed to Vehicle

Dealer Installed Accessories When Optional to Purchaser:
GAP WAIVER PURCHASED FOR $800.00 INCLUDED ON LINE #5

Salesperson: DON VANN

### Registration Information
Expires on: 07/03/2017
[XX] TRANSFER
Year: 2016  Make: DODGE  Body Style: 4D4 SDN SXT
Vehicle No.: 2C3CDXJG7GH144435
County of Residence: GENESEE

Complete Names and Addresses of All Owners or Lessors:
VICKY SUE JONES
1114 LAKE SHORE CIRCLE
GRAND BLANC MI 48439

First Secured Interest: CPS INC
Address: PO BOX 57071
City-State Zip: IRVINE CA 92619-7071
Filing Date: 09/08/2016

License Fee: N/A
Title: 15.00
Title Late Fee: N/A
Tax: 2045.46
Reg. Transfer Fee: 8.00
Total - Transfer to #4: 2068.46

| # | Description | Amount |
|---|---|---|
| 1 | PURCHASE PRICE OF VEHICLE (Including Freight & Accessories) | 33857.00 |
| 2 | OTHER TAXABLE CHARGES (Documentary Fee, Service Fee, Temp. Reg. Fee, Etc.) | 210.00 |
| 2.A | OPTIONAL $24 ELECTRONIC FILING FEE | 24.00 |
| 3 | TOTAL TAXABLE PRICE | 34091.00 |
| 4 | (Above total) SALES TAX - LICENSE - TITLE | 2068.46 |
| 5 | NON-TAXABLE CHARGES (Labor, Service Contract, Etc.) | 1730.00 |
| 6 | TOTAL DELIVERED PRICE | 37889.46 |
| 7 | CASH ON DEPOSIT | N/A |
| 8 | CASH DUE ON DELIVERY INCL 7036.00 REB | 8036.00 |
| 9 | TRADE-IN | N/A |
| 10 | LESS LIEN | N/A |
| 11 | TOTAL DOWN PAYMENT | 8036.00 |
| 12 | UNPAID BALANCE TO BE FINANCED | 29853.46 |
| 13 | INSURANCE SURCHARGE* | N/A |
| 14 | TOTAL AMOUNT OF FINANCE CONTRACT | 29853.46 |

*TYPE OF INSURANCE
WARNING: This Insurance is not PL/PD No Fault Insurance required by Michigan law.
[ ] CREDIT LIFE  [ ] HEALTH & ACCIDENT  [ ] GAP INSURANCE

**PURCHASER WARNING: DO NOT SIGN BLANK FORM**
I am purchasing or leasing this vehicle and am applying for a Michigan certificate of title and registration or, if the lessee, applying for a registration. I certify that my driver license is not suspended, revoked, or denied, as a repeat offender and I am eligible to purchase or register the vehicle. I further certify that if a tax exemption is shown above it is valid.

Date: 09/08/16

**EXHIBIT "C"**

# EXHIBIT

# "C"

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY STYLE |
|---|---|---|---|---|
| 2C3CDXJG7GH144435 | 2016 | DODGE | CHARGER | FOUR DOOR |

| TITLE NUMBER | ISSUE DATE | ODOMETER | BRAND/LEGEND |
|---|---|---|---|
| 603E2532835 A | 09/12/2016 | 000066 | |

| WEIGHT/FEE CATEGORY | ODOMETER BRAND |
|---|---|
| 32 | *ACTUAL MILEAGE* |

OWNER(S) NAME AND ADDRESS

VICKY SUE JONES
1114 LAKE SHORE CIR
GRAND BLANC MI 48439

First Secured Party
CPS INC
PO BOX 57071
IRVINE CA 92619

Filing Date
09-08-2016

Release of First Lien:
X _____
Signature of Agent     Date

## Title Assignment by Seller

State and federal laws require the seller(s) to indicate mileage when ownership is transferred. Failure to complete or providing false information may result in civil liability, fines and/or imprisonment. ANY ALTERATION, ERASURE, FALSE STATEMENT, FORGERY OR FRAUD VOIDS THIS TITLE AND IS A CRIME.

**Completed by Seller**

I warrant that the ownership of the vehicle described on Certificate of Title has been transferred to the following purchaser(s) and is free of all previous liens:

| Printed Name of Purchaser(s) | | Date of Sale | Selling Price |
|---|---|---|---|
| Purchaser's Street Address | City | State | Zip |

I (we) certify that the odometer reading is: ☐☐☐☐☐☐.☒ (No Tenths) and that to the best of my knowledge the odometer mileage is:

☐ actual mileage ☐ not actual mileage - WARNING ODOMETER DISCREPANCY ☐ exceeds mechanical limits of odometer (odometer has rolled over)

| Signature of Seller(s) X | Printed Name of Seller(s) | | |
|---|---|---|---|
| Seller's Street Address | City | State | Zip |

**Completed by Buyer**

A $15.00 Late Fee is Due for Failure to Apply for Title Within 15 Calendar Days of Date of Assignment
"I am aware of the above odometer certification made by the seller(s)."

| Signature of Purchaser(s) X | Printed Name of Purchaser(s) |
|---|---|

NEW LIENHOLDER INFORMATION: The information below must be on an application for title and presented to the Michigan Department of State.

| Secured Party: | Address: |
|---|---|

The State of Michigan, Michigan Department of State certifies that this certificate of title is issued in compliance with the laws of Michigan and constitutes prima facie proof of ownership. Further, on the date of title issuance, the described vehicle was subject to the security interest(s) listed above.

MAILING ADDRESS

VICKY SUE JONES
1114 LAKE SHORE CIR
GRAND BLANC MI 48439

G86564917

**NOTICE TO SELLERS**
Sellers must keep a receipt or photocopy of the reassigned title for their records for 18 months or accompany the purchaser to a Secretary of State Office.



DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS