# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Vicky Jones,

                Plaintiff,      Case No. 16-cv-13464

v.                           Judith E. Levy
                           United States District Judge

Suburban CJ of AA, LLC,

                           Mag. Judge Stephanie Dawkins
             Defendant.    Davis

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [9]

Before the Court is defendant Suburban CJ of AA, LLC's motion for judgment on the pleadings. (Dkt. 9.)[1] A hearing was held on the motion on April 11, 2017, and oral argument was heard.

For the reasons set forth below, defendant's motion is granted.

## I.    Background

On September 8, 2016, plaintiff purchased a 2016 Dodge Charger for $37,889.46 plus taxes and fees, and a Chrysler Service Contract for

---

[1] Defendant's motion was filed as a motion to dismiss under Fed. R. Civ. P. 12(b)(3). At the April 11, 2017 hearing, defendant moved to convert the filing to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). The Court granted the oral motion.

$930.  (Dkt. 11 at 2.)[2]  She made a down payment of $1,000 and requested financing for the remaining balance.  The installment sales contract executed between the parties identifies plaintiff as "buyer" and defendant as "seller-creditor."  (*Id.* at 18.)  The terms required plaintiff to make monthly payments of $635.35 beginning October 8, 2016.  (*Id.* at 19.)  It also stated that "Dealer may assign this contract and retain its right to receive a part of the finance charge."  (*Id.* at 20.)

That same day, plaintiff also completed an application for Michigan title for the vehicle.  The application listed CPS, Inc. as the "First Secured Interest."  (Dkt. 11 at 22 (Ex. B).)  Plaintiff alleges she believed CPS, Inc. to have already approved her financing because she was allowed to take delivery of the vehicle that day, and because its name was listed on the title application.  (*Id.* at 3.)

Defendant filed the application for Michigan title, and then provided plaintiff with a Certificate of Title, dated September 12, 2016, that listed CPS, Inc. as the "First Secured Party."  (Dkt. 11 at 3, 24 (Ex. C).)

---

[2] The complaint states the date was September 9, 2016, but the relevant contract is dated September 8, 2016.

On September 14, 2016, CPS, Inc. allegedly notified defendant that it rejected financing for her vehicle purchase. Defendant's employees then allegedly contacted plaintiff to advise her of problems with her financing, informed her that they were attempting to secure financing with another entity, and requested plaintiff return the vehicle. Plaintiff refused to do so. (Dkt. 11 at 3.)

On September 22, 2016, plaintiff allegedly received a letter from defendant, indicating it had cancelled her Chrysler Service Contract. (Dkt. 11 at 4.) At the hearing held on April 11, 2017, defense counsel informed the Court that defendant had mistakenly cancelled the contract on September 20, 2017, and had reinstated it on October 10, 2017.

Four days later, on September 26, 2016, plaintiff filed a complaint against defendant for allegedly acting in violation of the Truth in Lending Act, the Equal Credit Opportunity Act, the Fair Credit Reporting Act, the Motor Vehicle Installment Sales Contract Act, and was liable for misrepresentation/fraud and breach of contract. (Dkt. 1.)

On September 28, 2016, defendant contacted plaintiff, stating it would finance the sale and requested plaintiff sign a new application for title. That same day, plaintiff allegedly received a letter from Ally

Financial, denying her financing for her vehicle. (Dkt. 11 at 4.) On October 2, 2016, plaintiff allegedly received a similar letter from AmeriCredit.

On October 11, 2016, plaintiff received a letter from defendant, which stated the finance contract had not been assigned to an outside lender, and confirmed defendant would be the lienholder. (Dkt. 11 at 4–5, 26 (Ex. D).) The letter instructed plaintiff to submit payments of $635.35 by the 9th of each month to "Suburban Chrysler Dodge Jeep Ram of Ann Arbor, Attention: Cynthia Melnik, 2060 West Stadium Blvd., Ann Arbor, MI 48103, <u>except</u> for the first payment which is due on 10/21/2016." (*Id.* at 26.)

On or about November 4, 2016, plaintiff was allegedly informed by CPS, Inc. that it would provide financing, and defendant then allegedly declined to finance the transaction. (Dkt. 11 at 5.) On November 7, 2016, defendant executed a contract with CPS, Inc. through which CPS, Inc. agreed to purchase the financing contract executed on September 8, 2016. (Dkt. 9-3 at 2.)

After these events transpired, plaintiff filed an amended complaint to include new allegations and amend the claims under the Equal Credit

Opportunity Act and Motor Vehicle Installment Sales Contract Act. (Dkt. 11.)

## II. Legal Standard

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The allegations "need to be sufficient to give notice to the defendant as to what claims are alleged," and they must state a plausible claim for relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. Analysis

Defendant argues plaintiff failed to state a claim on all counts. (Dkt. 9 at 2.)

***Count I: Truth in Lending Act***

Plaintiff argues defendant violated the Truth in Lending Act ("TILA") in the following ways:

- Failing to accurately disclose the finance charge in violation of 15 U.S.C. § 1638, 12 C.F.R. § 226.18(d);
- Failing to disclose and itemize the amount financed in violation of 15 U.S.C. § 1638, 12 C.F.R. §§ 226.18(b)-(c);
- Misstating the annual percentage rate in violation of 15 U.S.C. § 1338,[3] 12 C.F.R. § 226.18(e);
- Failing to disclose the applicable APR in violation of 15 U.S.C. § 1638, 12 C.F.R. § 226.18(32)[4], and 12 C.F.R. § 226.22.

(Dkt. 11 at 7.)

Additionally, plaintiff argues that any disclosures made were "illusory" because defendant reserved the right to unilaterally change the terms of the contract. (Dkt. 11 at 8.) Defendant argues that the installment sales contract demonstrates that all terms were disclosed in accordance with TILA, and no terms of the financing have been altered. (Dkt. 9 at 10.)

TILA, 15 U.S.C. § 1638 *et seq.*, was enacted to "assur[e] meaningful disclosure of credit terms to consumers." *Baker v. Sunny Chevrolet, Inc.*,

---

[3] The Court assumes plaintiff intended to type section 1638, not 1338.
[4] There is no 12 C.F.R. § 226.18(32), and it is unclear what plaintiff is referencing.

349 F.3d 862, 864 (6th Cir. 2003).  To promote that end, "the statute must be considered liberally in the consumer's favor."  *Id.*  15 U.S.C. § 1638(a) requires a creditor to make certain disclosures, including the amount financed, an itemization of the amount financed, the finance charge, and the finance charge expressed as an annual percentage rate.[5]  These disclosures must be made "before the credit is extended."  15 U.S.C. § 1638(b)(1).

Regulation Z, 12 C.F.R. § 226.1 *et seq.*, is a regulation "promulgated . . . to implement TILA," and "prescribes the form in which a creditor must disclose the items pursuant to 15 U.S.C. § 1638."  *Baker*, 349 F.3d at 865.  12 C.F.R. §§ 226.18(b)-(e) require disclosure of the following:

(b) Amount financed. The amount financed, using that term, and a brief description such as the amount of credit provided to you or on your behalf. The amount financed is calculated by:

(1) Determining the principal loan amount or the cash price (subtracting any down payment);

(2) Adding any other amounts that are financed by the creditor and are not part of the finance charge; and

---

[5] Subsection (a) requires additional disclosures that do not appear relevant to plaintiff's claim.

(3) Subtracting any prepaid finance charge.

(c) Itemization of amount financed.

(1) A separate written itemization of the amount financed, including:

(i) The amount of any proceeds distributed directly to the consumer.

(ii) The amount credited to the consumer's account with the creditor.

(iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.

(iv) The prepaid finance charge.

(2) The creditor need not comply with paragraph (c)(1) of this section if the creditor provides a statement that the consumer has the right to receive a written itemization of the amount financed, together with a space for the consumer to indicate whether it is desired, and the consumer does not request it.

(d) Finance charge. The finance charge, using that term, and a brief description such as "the dollar amount the credit will cost you."

(1) Mortgage loans. In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge

(including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge:

(i) Is understated by no more than $100; or

(ii) Is greater than the amount required to be disclosed.

(2) Other credit. In any other transaction, the amount disclosed as the finance charge shall be treated as accurate if, in a transaction involving an amount financed of $1,000 or less, it is not more than $5 above or below the amount required to be disclosed; or, in a transaction involving an amount financed of more than $1,000, it is not more than $10 above or below the amount required to be disclosed.

(e) Annual percentage rate. The annual percentage rate, using that term, and a brief description such as "the cost of your credit as a yearly rate."

12 C.F.R. § 226.22 sets forth how the creditor should calculate the annual percentage rate, and when the disclosed rate is considered accurate and inaccurate.

Here, plaintiff argues each of these provisions was violated because defendant failed to disclose and itemize the finance charge and amount financed, and disclose the appropriate APR on the installment sales contract. But the contract, which plaintiff attached to the amended complaint, expressly includes and discloses each of these terms. (*See* Dkt.

11 at 18–19.) The finance charge is listed as $23,515.94, the APR is 18.45%, the amount financed is $29,853.46, and the bottom of the first page and onto the second page has a table itemizing the amount financed. (*Id.*) "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (internal quotations omitted). Further, even though plaintiff alleges the terms were "illusory," plaintiff has provided no allegations from which the Court could plausibly infer that defendant reserved the right to alter the terms at will.[6] Accordingly, plaintiff has failed to state a claim, and defendant's motion as to Count I is granted.

### Count II: Equal Credit Opportunity Act

Plaintiff argues defendant violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691(d)(2)-(3), (6), by offering financing even though it knew the initial credit approval was false, then rescinding the

---

[6] To the extent that plaintiff argues the cancellation of the Chrysler Service Contract may support this claim, because defendant reinstated the contract before plaintiff filed its amended complaint, the issue is moot. And even if it were not, the cancellation does not support the claim that defendant believed the terms of the contract signed September 8, 2016 were not final given that the terms of the installment sales contract were not changed before or after cancellation and reinstatement of the service contract.

decision to provide financing "by failing to secure third party financing," and later again declining to finance the transaction despite agreeing to do so on September 28, 2016. Plaintiff also argues defendant violated ECOA by failing to provide plaintiff with notice or reasons for the adverse action. (Dkt. 11 at 9.) Defendant argues that it took no adverse action, as defined by statute, because credit was not revoked or denied. (Dkt. 9 at 11; Dkt. 17 at 6.)

Under ECOA, a creditor must provide a "statement of reasons for [adverse action]" taken against an applicant, and include the "specific reasons for the adverse action taken." 15 U.S.C. §§ 1691(d)(2)-(3). To establish a *prima facie* case under ECOA, a plaintiff must demonstrate "(1) [s]he engaged in a statutorily protected activity; (2) suffered an adverse credit action; and (3) a causal connection exists between the two." *McGee v. E. Ohio Gas Co.*, 111 F. Supp. 2d 979, 984 (S.D. Ohio 2000) (quoting *Lewis v. ACB Bus. Serv.*, 135 F.3d 389, 406 (6th Cir. 1998)). An "adverse action" is a "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

Here, defendant signed the installment sales contract with plaintiff as the "seller-creditor." (Dkt. 11 at 18.)  Taking plaintiff's allegations as true, at most, there appears to have been some confusion as to when or whether CPS, Inc. would purchase the contract for financing.  But defendant was plaintiff's initial creditor and never revoked or denied plaintiff credit.  And plaintiff's counsel conceded at the April 11, 2017 hearing that he could not identify an adverse action taken by defendant against plaintiff, arguing instead that he would need discovery to do so.  However, plaintiff must plausibly allege in the complaint that an adverse action was taken to maintain a cause of action under ECOA.  Accordingly, plaintiff has failed to state a claim, and defendant's motion as to Count II is granted.

### Count III: Misrepresentation/Fraud

Plaintiff argues that defendant defrauded plaintiff by making a number of misrepresentations.  Defendant argues that no misrepresentations were made.  Plaintiff argues the following misrepresentations were made:

a.  Plaintiff would be timely and properly financed;
b.  Any and all documents required to make the sale final, binding, and legally legitimate would be filed in a timely fashion;

c. Plaintiff would be properly licensed and titled to drive the subject vehicle legally;

d. That Defendant would refrain from soliciting financing for the subject transaction and refrain from causing inquiries on Plaintiffs' credit report;

e. That Plaintiff was accepted for final financing by CPS and that no other information or duties were required;

f. That if Plaintiff made the $1,000 down payment and signed the requested documents, the subject vehicle would be finally sold to her;

g. That Suburban would agree to finance the vehicle;

h. By omission that Suburban would honor the Chrysler Service Contract that she paid for, and not cancel it without her consent;

i. All of the other misrepresentations and/or omissions outlined in the general allegations above.

(Dkt. 11 at 11.)

To state a claim for fraud under Michigan law, a plaintiff must show "(1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it: and (6) that he thereby suffered injury." *Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 913 (E.D. Mich. 2012) (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976); *Higgins v. Lawrence*, 107 Mich. App. 178, 184

(1981)); *see also Titan Ins. v. Hyten*, 491 Mich. 547, 555 (2012) (citations and quotations omitted). Under the Federal Rules of Civil Procedure, "a party must state with particularity the circumstances constituting fraud or mistake." *Talton*, 839 F. Supp. 2d at 913; Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

First, with respect to allegations (a) and (c), at the April 11, 2017 hearing, plaintiff's counsel conceded that he could not identify any specific dates on which plaintiff was not financed and admitted she was always properly licensed. Thus, claim (a) has not been pleaded with particularity and (c) is admitted as untrue.

Further, with respect to (b) and (f), plaintiff has not provided any allegations to support the contention that the sale was not final, and therefore has failed to plead with particularity to sustain these claims.

Claim (d) is plainly contradicted by plaintiff's own argument that defendant told her the financing would be provided by CPS, Inc., a third party, and the fact that CPS, Inc. did, in fact, agree to serve as a third-party financer.

Allegations (e) and (g) are also contradicted by the installment sales contract, which lists defendant as the original financer, and the contract in which CPS, Inc. agreed to serve as the financer. Thus, plaintiff cannot plausibly argue these alleged claims were misrepresentations.

Claim (h) cannot be sustained because plaintiff's service contract was reinstated by the time the amended complaint was filed, and she has not articulated that she suffered any specific injury due to its temporary cancellation between September 20 and October 10.

Finally, claim (i) cannot be sustained because the misrepresentations must be pleaded with particularity. Plaintiff bears the burden of identifying these misrepresentations, not the Court, and a "catch-all" claim does not satisfy this burden. Accordingly, defendant's motion as to Count III is granted.

### Count IV: Fair Credit Reporting Act

Plaintiff alleges defendant violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m(h), by failing to provide her with a risk based pricing notice ("RPBN") when it agreed to finance the transaction and when it assigned the contract to CPS, Inc. (Dkt. 11 at 12–13.) Defendant argues the notice requirement is not applicable to it because

plaintiff applied for and was granted credit on the requested terms, and because there is no private right of action under section 1681m in its entirety. (*Id.* at 13–14.)

15 U.S.C. § 1681m(h)(1) requires "users" of "a consumer report" to provide the consumer "oral, written, or electronic notice" if the report was used "in connection with an application for, or a grant, extension, or other provision of, credit on material terms that are materially less favorable than the most favorable terms available to a substantial proportion of consumers." 15 U.S.C. § 1681m(h)(8) states that "Sections 1681n and 1681*o* [which provide for private civil actions] of this title shall not apply to any failure by any person to comply with this section."

"No dispute exists as to the fact that before the 2003 amendments, FCRA authorized a private right of action to remedy noncompliance with § 1681m." *Barnette v. Brook Rd., Inc.*, 429 F. Supp. 2d 741, 747 (E.D. Va. 2006). The question presented here is whether subsection (h) of section 1681m eliminates the private right of action.

"The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). And "when the statute's language is plain, the sole function of the

courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.*

Defendant argues there is no private right of action under any part of section 1681m. But the Court need not decide this question because plaintiff seeks to bring its claim solely under section 1681m(h). And section 1681m(h)(8) clearly states that "no civil action" may be maintained under this "section."

Although courts around the nation disagree as to whether this prohibition on private suits applies to all of section 1681m, none dispute that the statutory text bars private causes of action under section 1681m(h). *See, e.g.*, *Wiggins v. Argent Mortg. Co.*, Case No. 11-cv-15118, 2012 WL 2992602, at *2 (E.D. Mich. July 20, 2012) (denying objection to Magistrate Judge's conclusion that there was no private right of action under all of section 1681m); *Bourdelais v. J.P. Morgan Chase*, Case No. 10cv670, 2011 WL 1306311, at *6 (E.D. Va. Apr. 1, 2011) ("Virtually every federal district court and the only federal court of appeals [7th Cir.] to interpret § 1681m(h)(8) has found . . . no private right of action exists for violations of section 1681m in its entirety"); *Kubbany v. Trans Union, LLC*, Case No. 08-00320, 2009 WL 1844344, at *1 (N.D. Cal. June 10,

2009) ("The issue presented is whether the addition of subsection (h)(8) was intended to preclude private enforcement of all of the subsections of § 1681m, or just of new subsection (h)," and concluding the amendment bars actions only under subsection (h)).  Accordingly, defendant's motion for judgment on the pleadings on Count IV is granted.

### *Count V: Breach of Contract*

Plaintiff alleges that defendant breached a contract between the parties by (1) failing to provide financing in a timely manner, (2) soliciting financing and causing inquiries into plaintiff's credit history after representing that the transaction was financed by CPS, Inc., and (3) unilaterally cancelling the Chrysler Service Contract.  (Dkt. 11 at 13–14.)  Defendant argues there was no breach of contract because defendant never cancelled the financing agreement, but retained it until CPS, Inc. accepted assignment.  (Dkt. 9 at 14.)  Further, plaintiff has not established a contract or a breach related to the alleged ban on soliciting financing.  (Dkt. 17 at 7.)

Under Michigan law, to state a breach of contract claim, a plaintiff must allege "(1) a contract between the parties, (2) the terms of the contract require performance of a certain action, (3) a breach, and (4) the

breach caused injury to the other party." *Collins v. CitiMortgage, Inc.*, 974 F. Supp. 2d 1034, 1041 (E.D. Mich. 2013).

First, plaintiff alleges defendant failed to provide financing in a timely manner. But at the April 11, 2017 hearing, as set forth above, plaintiff's counsel admitted he could identify no specific date on which plaintiff was not financed, either by defendant or CPS, Inc. The installment sales contract clearly lists defendant as "seller-creditor," and no allegations in the amended complaint plausibly suggest defendant revoked the financing. Accordingly, plaintiff has failed to establish a breach or any damages.

Second, plaintiff alleges defendant breached the contract by soliciting financing from a third party. But the express terms of the installment sales contract gave defendant the right to assign the contract to a third party for financing. Thus, plaintiff has failed to plausibly allege defendant breached the contract.

Third, plaintiff argues defendant breached the contract by cancelling the Chrysler Service Contract. But, as set forth above, defendant had reinstated the contract by the time plaintiff filed the amended complaint. And the amended complaint does not reflect this

fact or provide either (1) the terms of the contract related to termination or (2) the damages plaintiff suffered as a result of the cancellation and then reinstatement. Accordingly, plaintiff has failed to state a claim, and defendant's motion as to Count V is granted.

### Count VI: Motor Vehicle Installment Sales Contract Act

Plaintiff argues that defendant violated Michigan's Motor Vehicle Installment Sales Contract Act ("MVISC"), MICH. COMP. LAWS § 566.302 *et seq.*, by failing to complete all terms of the installment contract, failing to disclose potential problems with financing with Form TR-210, and substituting itself as the first secured party on the title by subsequently filing Form TR-209 with the Michigan Secretary of State. (Dkt. 11 at 14–15.) Defendant argues plaintiff has not identified what information was not disclosed as required, that all required disclosures were made, and the statute does not cover failure to file Forms TR-209 and TR-210. (Dkt. 9 at 15; Dkt. 17 at 7–8.)

Under the MVISC, a motor vehicle installment sales contract must state the following items in the following order:

> (1) the cash price of the motor vehicle which is the subject matter of the retail installment sale; (2) the amount in cash of the retail buyers' down payments, whether made in money or goods or partly in money and partly in goods; (3) the unpaid

balance of the cash price payable by the retail buyer to the retail seller, which is the difference between items 1 and 2; (4) the cost to the retail buyer of any insurance the retail seller has agreed to procure, if the retail seller has agreed to purchase the insurance and extend credit to the retail buyer for the price thereof and if the term of such insurance is less than the contract period, the period of the coverage also shall be recited; (5) the principal balance owed on the retail installment contract, which is the sum total of items 3 and 4; (6) the amount of the finance charge; (7) the time balance owed by the retail buyer to the retail seller and the number of installment payments required and the amount and date of each payment necessary finally to pay the time balance, which is the sum total of items 5 and 6.

MICH. COMP. LAWS § 566.302(2).

First, the face of the installment sales contract is clear and discloses each of the required seven items. (*See* Dkt. 11 at 18–20.) Second, plaintiff alleges the terms disclosed were illusory, but has not provided any allegations to suggest defendant changed any terms or that would plausibly suggest defendant reserved the right to change the terms.

Additionally, the statute does not reference Forms TR-209 and TR-210, which are separate from the installment sales contract, and are issued by the Michigan Secretary of State. Form TR-209 is a notice of rejection of vehicle financing, and Form TR-210 is a notice of assignment of financing. The MVISC applies to the "retail contract to sell a motor

vehicle," which is defined as "any written instrument which is executed in connection with any retail installment sale." MICH. COMP. LAWS §§ 566.301(1)(a), (g). The scope of the statute is therefore limited to the contracts executed between the parties, and does not extend to forms created by the Michigan Secretary of State even if they must be signed by the parties to a motor vehicle sales transaction. Thus, plaintiff cannot maintain an action under this statute for conduct related to these forms. Defendant's motion for judgment on the pleadings on Count VI is granted.

## IV. Conclusion

For the reasons set forth above, defendant's motion for judgment on the pleadings (Dkt. 9) is GRANTED.

IT IS SO ORDERED.

Dated: April 17, 2017               s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 17, 2017.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager